1  Michelangelo Tatone (SBN: 290431)
   Xiaona Ding (SBN: 330351)
2  **TATONE LAW, APC**
   4333 Admiralty Way, Ste. 100
3  Marina del Rey, CA 90292
4  Phone: (424) 289-9707
   Email: mtatone@tatonelegal.com
5  Email: dding@tatonelegal.com

6  Attorneys for Plaintiffs
   JACK ESKENAZI and
7  AMERICAN HEALTH CAPITAL dba
   AMERICAN HEALTHCARE CAPITAL
8

9                    **UNITED STATES DISTRICT COURT**

10                   **CENTRAL DISTRICT OF CALIFORNIA**

11 | JACK ESKENAZI, an individual; | Case No: 2:23-cv-5099 |
12 | AMERICAN HEALTH CAPITAL, a California corporation dba AMERICAN HEALTHCARE CAPITAL, | **COMPLAINT FOR:** |
13 | | |
14 | Plaintiffs, | 1. **MISAPPROPRIATION OF TRADE SECRET PURSUANT TO DEFEND OF TRADE SECRETS ACT OF 2016;** |
15 | v. | |
16 | MIKE MORAN, an individual; M.A.E.C LLC, a California Limited Liability Company; ANDRE ULLOA, an individual; MARK THOMAS, an individual; HEALTHCARE DEAL TEAM, a business entity form unknown; and DOES 1 through 20, Inclusive, | 2. **VIOLATION OF COMPUTER FRAUD AND ABUSE ACT;** |
17 | | 3. **UNFAIR COMPETITON UNDER LANHAM ACT;** |
18 | | 4. **TRADEMARK INFRINGEMENT, U.S.C. § 1125** |
19 | | |
20 | Defendants. | |
21 | | **DEMAND FOR JURY TRIAL** |

**COMES NOW** Plaintiffs JACK ESKENAZI, an individual and AMERICAN HEALTH CAPITAL, a California corporation dba AMERICAN HEALTHCARE CAPITAL ("Plaintiffs") who complain and allege as follows:

1

COMPLAINT

**PARTIES**

1. Plaintiff, JACK ESKENAZI is, and at all times herein mentioned was, an individual over the age of eighteen (18) years and, is a resident in the County of Los Angeles, State of California.

2. Plaintiff, AMERICAN HEALTH CAPITAL dba AMERICAN HEALTHCARE CAPITAL ("AHC") is, and at all times herein mentioned was, a corporation organized under the laws of the State of California and doing business in the County of Los Angeles, State of California.

3. Plaintiffs, on information and belief, allege that Defendant MIKE MORAN ("Moran") is, and at all times herein mentioned was, an individual over the age of eighteen (18) years residing in the State of California, County of Los Angeles.

4. Plaintiffs, on information and belief, allege that Defendant M.A.E.C LLC ("MAEC" and/or "ALTER EGO COMPANY NO. 1") is, and at all times herein mentioned was, a single-member limited liability company consisting of Defendant Moran as its sole member, and organized under the laws of the State of California and doing business in the County of Los Angeles, State of California.

5. Plaintiffs, on information and belief, allege that Defendant ANDRE ULLOA ("Ulloa") is, and at all times herein mentioned was, an individual residing in the State of California, County of Los Angeles.

6. Plaintiffs, on information and belief, allege that Defendant MARK THOMAS ("Thomas") is, and at all times herein mentioned was, an individual residing in the State of California, County of Los Angeles.

7. Plaintiffs, on information and belief, allege that Defendant HEALTHCARE DEAL TEAM ("DEAL TEAM" and/or "ALTER EGO COMPANY NO. 2") is an unknown business entity that is controlled by Defendants Ulloa, Moran, and Thomas.

8. At all times relevant herein, Defendants MIKE MORAN, M.A.E.C LLC, ANDRE ULLOA, MARK THOMAS, and HEALTHCARE DEAL TEAM (hereinafter occasionally

collectively referred to as "Defendants") were involved in various business dealings in the State of California, County of Los Angeles, and throughout the Country of the United States.

9. Plaintiffs are informed and believe and thereon allege that each and every one of the named and unnamed Defendants herein were the agents, employees, representatives, and/or servants of each other, and were acting within the course and scope of that agency and capacity at all times material, and with the express or implied knowledge consent, and/or ratification of each other, and are accordingly liable for all the acts and omissions of each Defendant.

10. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 20, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein, as a DOE is responsible in some manner and to some extent for the events and occurrences referred to herein, and for the damages resulting to Plaintiffs. At such time as Plaintiffs learn the true name and capacity of any Defendant named as a DOE herein, Plaintiffs will amend the complaint to identify said Defendant, and include accompanying charging allegations.

11. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, members, employees, agents, and/or representatives, while acting within the actual or ostensible scope of their authority.

12. Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with full knowledge that their conduct violated well established and settled cases and statutory law.

**JURISDICTION AND VENUE**

13. This action arises under, *inter alia*, the Defend Trade Secrets Act, 18 U.S.C. § 1836, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Lanham Act, 15 U.S.C. § 1125(a).

COMPLAINT

14. This Court has federal question jurisdiction over all of the claims in this action pursuant to 28 U.S.C. § 1331, as this case arises under the Defend Trade Secrets Act, the Federal Computer Fraud Act, and the Lanham Act.

15. The Court has personal jurisdiction over Defendants because, *inter alia,* (a) Defendant M.A.E.C LLC and Defendant HEALTHCARE DEAL TEAM have availed themselves to this Court's jurisdiction by virtue of doing business in the State of California, satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Co. v. State of Washington* (1945) 326 U.S. 310; and (b) Defendants MIKE MORAN, ANDRE ULLOA, and MARK THOMAS all reside in the State of California.

16. Venue is proper under Section 1391(b) of the Judicial Code, 28 U.S.C.§ 1391(b) in that a substantial part of the events giving rise to the claims occurred in and were and are directed from this District.

**CIVIL CONSPIRACY ALLEGATIONS**

17. Plaintiffs are informed and believe and thereon allege that Defendants knowingly and willfully conspired and agreed among themselves to misappropriate Plaintiffs' trade secrets and interfere with Plaintiffs' businesses as described in this Complaint.

18. Plaintiffs are informed and believe and thereon allege that Defendants did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.

19. Defendants committed the acts alleged herein maliciously, fraudulently and with the wrongful and deliberate intention of injuring Plaintiffs and benefitting themselves and acted with an improper motive amounting to malice and conscious disregard of Plaintiffs' rights. Accordingly, Plaintiffs are entitled to recover punitive and exemplary damages from Defendants.

**ALTER EGO ALLEGATIONS**

20. Plaintiffs are informed and believe and thereon alleges that the limited liability company M.A.E.C LLC and DOES 1 through 20, named as Defendants herein, were at all times relevant to the alter ego company of individual Defendant Moran by reason of the following:

a. Plaintiffs are informed and believe and thereon allege that Defendant Moran, at all times herein mentioned, dominated, influenced and controlled the ALTER EGO COMPANY NO. 1 and the member(s) thereof, as well as the business, property, and affairs of said company.

b. Plaintiffs are informed and believe and thereon alleges that at all times herein mentioned, there existed and now exists a unity of interest and ownership between said individual Defendant Moran and the ALTER EGO COMPANY NO. 1; the individuality and separateness of said individual Defendant Moran and the ALTER EGO COMPANY NO. 1 have ceased.

c. Plaintiffs are informed and believe and thereon allege that at all times since the formation of the ALTER EGO COMPANY NO. 1, it has been and now is a mere shell and naked framework which individual Defendant Moran, as its sole member, used as a conduit for the conduct of his personal business, property and affairs.

d. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, the ALTER EGO COMPANY NO. 1 was organized by said individual Defendant Moran as a device to avoid individual liability and for the purpose of creating a façade to avoid self-dealing and transacting at "arm's length."

e. By virtue of the foregoing, adherence to the fiction of the separate corporate existence of the ALTER EGO COMPANY NO. 1would, under the circumstances, sanction a fraud and promote injustice in that Plaintiffs would be unable to realize upon any judgment in their favor.

f. Plaintiffs allege that Defendant Moran is the sole employee, the sole member, the sole director, the sole shareholder of this entity and that the principal place of business of the ALTER EGO COMPANY NO. 1 is located out of Moran's primary home located in Agoura Hills, CA.

21. Plaintiffs are informed and believe and thereon allege that the limited liability company M.A.E.C LLC and DOES 1 through 20, named as Defendants herein, were at all times relevant to the alter ego company of individual Defendant Moran by reason of the following:

    a.    Plaintiffs are informed and believe and thereon allege that Defendants Ulloa, Moran, and Thomas, at all times herein mentioned, dominated, influenced and controlled the ALTER EGO COMPANY NO. 2 and the member(s) thereof, as well as the business, property, and affairs of said company.

    b.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, there existed and now exists a unity of interest and ownership between said individual Defendants Ulloa, Moran, and Thomas and the ALTER EGO COMPANY NO. 2; the individuality and separateness of said individual Defendants Ulloa, Moran, and Thomas and the ALTER EGO COMPANY NO. 2 have ceased.

    c.    Plaintiffs are informed and believe and thereon allege that at all times since the formation of the ALTER EGO COMPANY NO. 2, it has been and now is a mere shell and naked framework which individual Defendants Ulloa, Moran, and Thomas, used as a conduit for the conduct of their personal business, property and affairs.

    d.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, the ALTER EGO COMPANY NO. 2 was organized by said individual Defendants Ulloa, Moran, and Thomas as a device to avoid individual liability and for the purpose of creating a façade to avoid self-dealing and transacting at "arm's length."

    e.    By virtue of the foregoing, adherence to the fiction of the separate corporate existence of the ALTER EGO COMPANY NO. 2 would, under the circumstances, sanction a fraud and promote injustice in that Plaintiffs would be unable to realize upon any judgment in their favor.

    f.    Plaintiffs allege that Defendants Ulloa, Moran, and Thomas are the only employees, members, directors, and shareholders of this entity.

**JURY TRIAL DEMAND**

22.    Plaintiffs hereby respectfully request a trial by jury on all appropriate issues raised in this Complaint.

## GENERAL ALLEGATIONS

23. Plaintiff JACK ESKENAZI has been involved in the healthcare company acquisition business since 1989, and he has always used the name and mark American Healthcare Capital. The mark consists of a caduceus symbol, a staff entwined by two serpents surmounted by wings, partially enclosed within a triangle.

24. Plaintiff AMERICAN HEALTHCARE CAPITAL ("AHC") is a mergers & acquisitions advisory firm doing business throughout the United States in the healthcare service providers industry. AHC specializes in helping clients worldwide purchase or sell healthcare opportunities, primarily those who intend to sell their healthcare service business or buy a healthcare service business.

25. Plaintiff JACK ESKENAZI, President and founder of AHC, has created a business model that gives AHC a competitive advantage over similar companies. AHC's success is due to the unique database that the plaintiffs have spent considerable time, effort, and money building over the past 34 years.

26. On or about August 1, 2016, Plaintiffs hired Defendant Moran as an Independent Contractor to perform marketing, including sales and generating leads, to close transactions that create a fee for the Plaintiffs.

27. On or about October 31, 2016, Plaintiffs hired Defendant Ulloa as an Independent Contractor to perform marketing, including sales and generating leads, to close transactions that create a fee for Plaintiffs.

28. On or about September 20, 2017, Plaintiffs hired Defendant Thomas as an employee to perform administrative work under the title of Business Development Administrator and Analyst. As an employee of AHC, Thomas assisted and reported directly to Defendants Moran and Ulloa.

29. On or about January 29, 2020, Plaintiffs hired Defendant MAEC as an Independent Contractor to perform marketing, including sales and generating leads, to close transactions that

create a fee for the Plaintiffs. A true and correct copy of the Independent Contractor Agreement between Plaintiffs and Moran is attached as EXHIBIT 4.

30. Upon information and belief, at all times relevant herein, Defendants were working exclusively for Plaintiffs, representing such to Plaintiffs. Upon information and belief, around December 2020, Defendants began to conspire with each other and engage in activities designed to defraud Plaintiffs. These actions by the Defendants constitute criminal conduct, including but not limited to embezzlement.

31. Upon information and belief, in or around December 2020, Defendants ceased working for Plaintiffs at full capacity, without informing Plaintiffs. Throughout the relevant period, Defendants represented to Plaintiffs that they were working for and on behalf of Plaintiffs, even when this was not the case.

32. From around 2021 until the termination of their employment relationship, Plaintiffs observed that Defendants were not generating leads as required by their employment agreements. When Plaintiffs asked Defendants about their lack of output, Defendants continued to assert that they were working on significant deals for the benefit of Plaintiffs. The Defendants also claimed that they were referring leads to other contractors, but this was untrue.

33. Upon information and belief, Defendants Ulloa, Moran, and Thomas started to devise and established their rival company, HEALTHCARE DEAL TEAM, during this period. Plaintiffs allege on information and belief that Defendants used the name and mark of AMERICAN HEALTHCARE CAPITAL.

34. Plaintiffs repeatedly inquired about Defendants' deficient productivity, and on each occasion, Defendants affirmed that they were working for AHC and had no intention of discontinuing their work for AHC. Because of Plaintiffs' longstanding relationship with Defendants, Plaintiffs trusted Defendants and relied on their representations.

35. Starting from December 2020, instead of working for the benefit of Plaintiffs, Defendants allegedly began using Plaintiffs' resources and trade secrets, of prior and potential leads and other deal resources collected and built by Plaintiffs over the course of thirty-four (34)

8

COMPLAINT

years, and other proprietary business information. This was done to gain personal benefit and start a competing company. Furthermore, without Plaintiffs' knowledge or permission, Defendants took leads and deals from other AHC independent contractors and employees, using the AHC brand name and goodwill to grow their competitor company.

36. During this period, Plaintiffs continued to finance various resources such as press releases, travel, trade shows, and client gifts to help Defendants with their deals. This was because Plaintiffs relied on Defendants' promises and representations that they were working for Plaintiffs.

37. Upon information and belief, this "double dealing"[1] resulted in a loss to Plaintiffs and a gain to Defendants. The loss amounted to approximately $1,500,000 in wrongfully paid commissions which went directly and/or indirectly to Defendants.

38. Starting from approximately 2021 until the end of the employment relationship, Defendant Thomas downloaded a list of about 30,000 potential clients from Plaintiffs' database without authorization or consent. None of these clients led to any business for Plaintiffs. Plaintiffs believe that Defendant Thomas downloaded the contact list for the sole purpose of using it for himself and the other defendants to create their own competing company. Upon information and belief, Defendants have obtained more information from Plaintiffs using other resources and databases.

39. On or about April 27, 2021, Defendant Ulloa resigned from AHC by sending an email to Plaintiff JACK ESKENAZI. JACK ESKENAZI responded by expressing his desire to find a solution to keep Ulloa employed, but Ulloa refused. They met in person on May 3, 2021, to discuss Ulloa's departure. During the meeting, JACK ESKENAZI asked if Ulloa planned to take any of Plaintiffs' employees, including Defendants Moran and Thomas. Ulloa denied any intention of taking Moran and Thomas with him. At that time, Moran and Thomas also denied any plans to end their employment with Plaintiffs.

---

[1] "Double dealing" is defined by Oxford Languages as "the practice of working to people's disadvantage behind their backs." (https://www.lexico.com/en/definition/double-dealing)

40. On or about May 24, 2021, Defendant Thomas informed Plaintiff JACK ESKENAZI of his intention to resign and end his employment relationship with AHC via an email.

41. Soon after that, around June 4, 2021, Defendant Moran notified Plaintiffs via email of his plan to resign and end his employment with AHC.

42. Upon information and belief, Defendants are still utilizing Plaintiffs' resources, trademarks, proprietary business information, brand name, and goodwill without permission to complete deals for their own competing company.

## FIRST CAUSE OF ACTION
## MISAPPROPRIATION OF TRADE SECRET PURSUANT TO DEFEND OF TRADE SECRETS ACT OF 2016
### (Against all Defendants, and DOES 1 through 20)

43. Plaintiffs incorporate by this reference and re-allege each and every preceding paragraph set forth above as though fully set forth herein.

44. Plaintiffs own a trade secret that consists of a compilation of customer list and database of potential leads and other resources gathered and developed over a period of 34 years, which Plaintiffs have spent considerable time, effort, and money in its development. The list is not a mere list of customer contact information, but includes confidential proprietary information such as financials, as well as other information pertinent to each customer's interest(s) in acquiring or selling.

45. Plaintiffs have taken reasonable measures to keep the trade secret confidential, including limiting authorized employees and/or independent contractors to access it from a password protected computer, and requiring the authorized independent contractors to sign confidentiality agreements.

46. Plaintiffs' trade secret derives independent actual and potential economic value because it is a database created by Plaintiff which is not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Plaintiffs heavily rely on this trade secret to help

clients worldwide with the purchase or sale of healthcare opportunities. Plaintiff's trade secret cannot be purchased from the open public because it is accumulated and built by Plaintiffs over the past 34 years, which comprises confidential financial information of companies in the health care industry.

47. Plaintiffs disclosed their trade secret with Defendants while acknowledging that the secret must not be shared or used, as demonstrated by the Confidentiality Clause in Defendants' Independent Contractor Agreements (refer to EXHIBITS 1, 2, AND 4). Regarding Defendant Thomas, Plaintiffs informed him verbally and he understood through his employment with AHC that he was obligated not to use or disclose the secret due to the importance and value of the secret to the business.

48. Beginning in or around 2021 and continuing until the employment relationship was terminated, Defendant Thomas misappropriated Plaintiffs' trade secrets by downloading a list of contacts from Plaintiffs' database that contained about 30,000 potential clients without Plaintiffs' express and/or implied consent, Defendant acquired Plaintiffs' trade secrets by breaching his duty of loyalty to Plaintiffs as an employee. Plaintiffs believe that Defendant Thomas obtained this contact list with the intention of using it solely for the benefit of himself and all other Defendants to develop their competing company.

49. Upon information and belief, beginning in or about December 2020 and continuing, Defendants unlawfully misappropriated the trade secret of Plaintiff by utilizing Plaintiffs' resources, customer lists, databases and other proprietary business information to carry over leads and deals from the prior year, 2020, for their own personal gain and to start their own competitor company, including commandeering leads and deals from other AHC independent contractors and employees without Plaintiffs' express or implied consent.

50. Upon information and belief, Defendants Moran, MAEC, Ulloa, and Thomas used the trade secretes downloaded by Thomas in building their competitor businesses when all of these Defendants know or have reason to know that Defendant acquired Plaintiffs' trade secrets by improper means.

51. As a proximate result of Defendants' unlawful misappropriation, Plaintiffs have suffered actual losses consisting of unearned commissions wrongfully paid to Defendants, all to Plaintiffs' damage, in the sum of approximately $1,500,000.00.

52. As a proximate result of Defendants' unlawful misappropriation, Defendants have been unjustly enriched by obtaining commissions from sales, leads, and closed deals through the use of Plaintiffs' trade secret, and the exact amount will be determined at the time of trial.

53. Furthermore, Plaintiffs seek a temporary restraining order, preliminary injunction, and permanent injunction to prevent the ongoing misappropriation of their trade secret under the Code of Civil Procedure, section 526.

54. Defendants intentionally and maliciously acted against the Plaintiffs' business for their own benefit. Accordingly, pursuant to Civil Code section 3426.3(c), Plaintiffs are entitled to recover exemplary damages in an amount not exceeding twice the award of damages alleged above.

55. As a result of Defendants' acts as described herein, and which were undertaken willfully and maliciously, Plaintiffs have been required to secure the services of a law firm and have incurred and will continue to incur substantial attorneys' fees in connection with this matter. Pursuant to Civil Code section 3426.4, Plaintiffs are entitled to an award of reasonable attorneys' fees in this action.

### SECOND CAUSE OF ACTION
### VIOLATION OF COMPUTER FRAUD AND ABUSE ACT
### PURUSANT TO 18 U.S.C. §1030
### (Against all Defendants, and DOES 1 through 20)

56. Plaintiffs incorporate by this reference and re-allege each and every preceding paragraph set forth above as though fully set forth herein.

57. Plaintiffs' computers are involved in interstate and foreign commerce and communication and are protected computers under 18 U.S.C. §1030 (e)(2).

58. On information and belief, Defendants knowingly and intentionally accessed Plaintiffs computers without authorization or in excess of any authorization as defined by Plaintiffs clear written and oral policies.

59. On information and belief, beginning in or around 2021 and continuing until the employment relationship was terminated, Defendant Thomas without authorization or consent from Plaintiffs, and well beyond any authorized access ever granted by Plaintiffs, accessed Plaintiffs computer system and downloaded a list of contacts from Plaintiffs' database that contained about 30,000 potential clients.

60. On information and belief, Defendants Moran, MAEC, Ulloa conspired with Defendant Thomas to access Plaintiffs' protected computer to download Plaintiffs trade secrets to build their competing business.

61. The Defendants' actions have resulted in significant losses for the Plaintiff over several months, exceeding the statutory minimum of $5,000. This includes costs incurred while investigating the unauthorized access and misuse of the Plaintiffs' computer network.

62. The Defendants' actions have caused irreparable and immeasurable harm to the Plaintiff. This harm will persist unless the Defendants are prevented from continuing to use the information obtained from Plaintiffs' protected computers without authorization. Plaintiffs do not have an adequate legal remedy to address this situation.

63. Plaintiff seeks compensatory and other equitable relief under 18 U.S.C. §1030 (g) in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**UNFAIR COMPETITON UNDER LANHAM ACT §43(a), 15 U.S.C. §1125(a)**
**(Against all Defendants, and DOES 1 through 20)**

64. Plaintiffs incorporate by this reference and re-allege each and every preceding paragraph set forth above as though fully set forth herein.

65. Plaintiffs are informed and believe, and allege based thereon, that Defendants made false or misleading factual representations regarding the nature, characteristics or qualities of Plaintiffs' past successful transactions on Defendants competitor company's website, creating

the misleading impression to the public that these transactions were consummated by Defendants' own company rather than consummated using Plaintiffs' goodwill, trade secrets and other valuable resources of Plaintiffs. Defendants' unauthorized, unlawful, and fraudulent activities are likely to cause confusion, mistake, or to deceive as to the affiliation, connection, or association between Defendants own company and AHC.

66. Defendants used the false and misleading representations on their own company's website to solicit business from clients, domestically and internationally, as part of Defendants commercial advertising or commercial promotion efforts. Upon information and belief, Defendants, taking advantage of the above-motioned misleading representations, solicited business from clients globally.

67. Defendants' acts complained herein constitute misleading description of fact, or false or misleading representation of fact under Lanham Act, 15 U.S.C. §1125(a).

68. Defendants' unlawful actions have caused and will continue to cause Plaintiffs irreparable harm unless enjoined.

69. Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiffs. Defendants' unlawful actions have caused Plaintiffs monetary damage in excess of $1,500,000.00, in a precise amount to be determined in accordance with proof at trial.

**FOURTH CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT, U.S.C. § 1125**
**(Against all Defendants, and DOES 1 through 20)**

70. Plaintiffs incorporate by this reference and re-allege each and every preceding paragraph set forth above as though fully set forth herein.

71. Plaintiffs began using the AMERICAN HEALTHCARE CAPITAL mark dating back to at least 1989. Defendants had no affiliation with, or use of the AMERICAN HEALTHCARE CAPITAL mark until their employment relationships began with Plaintiffs in or around 2016 and 2017, respectively. As such Plaintiffs are the senior users of the AMERICAN

HEALTHCARE CAPITAL mark and accordingly, own rights in the AMERICAN HEALTHCARE CAPITAL mark.

72. At all times relevant herein, Defendants exercised ownership or control over verbal, print, and online advertising for its products, services and websites, and knowingly cooperated in and/or induced, encouraged, enabled or aided the infringement of Plaintiffs' trademark rights in advertising for its products, services, and websites.

73. Defendants' use of the AMERICAN HEALTHCARE CAPITAL mark and goodwill in interstate commerce is likely to cause customer confusion, to cause mistake or to deceive as to the origin of the products and services offered and sold by Defendants and as to their affiliation, connection, or association with and/or endorsement or approval by AHC.

74. The foregoing acts of Defendants constitute false designation of association, affiliation, connection, endorsement and/or approval under 15 U.S.C. § 1125(a), and/or vicarious or contributory infringement of Plaintiffs' rights under 15 U.S.C. § 1125(a).

75. Plaintiffs have been damaged and will continue to be damaged, and Defendants have been unjustly enriched by such unlawful conduct in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. General and special damages in an amount to be proven at trial;

2. Exemplary and punitive damages in an amount according to proof;

3. Temporary restraining order, preliminary injunction, and permanent injunctive relief to prevent Defendants' continued breach of the parties' agreements pursuant to California Code of Civil Procedure, section 526;

4. Temporary restraining order, preliminary injunction, and permanent injunctive relief to prevent Defendants' continued misappropriation of Plaintiffs' trade secret pursuant to California Code of Civil Procedure, section 526;

5. Temporary restraining order, preliminary injunction, and permanent injunctive relief to prevent Defendants' continued infringement of Plaintiffs' AMERICAN HEALTHCARE CAPITAL mark pursuant to California Code of Civil Procedure, section 526;

6. Preliminary injunction and permanent injunctive relief to prevent Defendants' continued infringement of Plaintiffs' AMERICAN HEALTHCARE CAPITAL mark pursuant to 15 U.S.C. § 1116.

7. Reasonable attorney fees and costs pursuant to contract and any and all applicable statutes;

8. Prejudgment interest;

9. For a declaration that Plaintiffs hold a valid trade secret;

10. Restitution; and

11. Such other and further relief as the Court deems just and property.

Dated: June 27, 2023                           TATONE LAW, APC

                                               /s/ Michelangelo Tatone
                                           By:_____
                                               MICHELANGELO TATONE
                                               XIAONA DING
                                               Attorneys for Plaintiffs
                                               JACK ESKENAZI and
                                               AMERICAN HEALTH CAPITAL dba
                                               AMERICAN HEALTHCARE CAPITAL